UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

MARIAH WALL, an individual,
CHRISTOPHER BOSTON, an
individual, and CRAIG MULHINCH,
an individual,

          Plaintiffs,

v

MICHIGAN RENTAL, a sole
proprietorship, ZAKI JAMIL ALAWI,
an individual, ZA HOLDING
COMPANY, LLC, a Michigan limited
liability company, and its subsidiaries
and affiliates,

          Defendants.

Judge
Magistrate Judge
Case No.

**CLASS ACTION COMPLAINT
FOR DAMAGES AND
DECLARATORY JUDGMENT**

**DEMAND FOR JURY TRIAL**

_____/

THE TROY LAW FIRM
DANIEL E. CHAPMAN (P41043)
KIMBERLY A. COCHRANE (P73032)
Attorneys for Plaintiffs
888 W Big Beaver Road, Ste 1400
Troy, MI 48084
(248) 244-9100
dchapman@troylawfirm.com
kcochrane@troylawfirm.com

COOPER LAW FIRM, PLLC
JOHN J. COOPER (P53738)
Attorneys for Plaintiffs
1615 W Big Beaver Road, Ste A6
Troy, MI 48084
(248) 822-2212
johnjcooper@sbcglobal.net

_____/

Plaintiffs, MARIAH WALL, CHRISTOPHER BOSTON, and CRAIG MULHINCH

(collectively "Representative Plaintiffs"), by their attorneys, THE TROY LAW FIRM and

COOPER LAW FIRM, PLLC, bring this action on behalf of themselves and all other similarly situated persons, against Defendants, MICHIGAN RENTAL, and ZAKI JAMIL ALAWI and ZA HOLDING COMPANY, LLC (collectively "Defendants"), and do hereby allege upon personal knowledge and belief as to their own acts, and upon information and belief (based on investigation by Representative Plaintiffs and counsel) as to all other matters, and as to which allegations Representative Plaintiffs believe substantial evidentiary support exists or will exist after a reasonable opportunity for further investigation and discovery of evidence, and state as follows:

## INTRODUCTION

1. This matter concerns a fraudulent scheme whereby Defendants, renting residential real property, reaped significant profits and personal benefits by (a) deriving income and other benefits through a pattern of using tenants' security deposits without the tenants' permission or knowledge and contrary to Michigan law; (b) deriving income and other benefits through a pattern of collecting tenants' security deposits and using same as Defendants' own assets; (c) deriving income and other benefits through a pattern of using tenants' security deposits for Defendants' own purposes and benefit, prior to obtaining a Uniform Landlord Security Deposit Surety Bond on March 7, 2014; and (d) presenting and entering into unlawful leases with tenants in violation of Michigan laws.

2. There were several goals of Defendants' fraudulent scheme including, but not limited to, using tenants' security deposits and commingling same with Defendants' assets to boost their financial net worth and pay debts, liabilities, and/or acquire assets, all to the detriment of the tenants.

3.  In furtherance of their fraudulent scheme, Defendants have violated and caused others employed by Michigan Rental to violate several statutes, regulations, and other state and federal legal requirements including, but not limited to:

    a.  The Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. §§1961-1968;

    b.  Laundering of Monetary Instruments, 18 U.S.C. §1956;

    c.  Mail Fraud, 18 U.S.C. §1341;

    d.  Wire Fraud, 18 U.S.C. §1343;

    e.  Bank Fraud, 18 U.S.C. §1344;

    f.  Michigan's Landlord And Tenant Relationships Act, M.C.L. §554.601 *et. seq.*;

    g.  Disposal of lessee's personal property, Criminal statute M.C.L. §750.181;

    h.  Possession of converted money, Criminal statute M.C.L. §750.535;

    i.  Violation of Criminal statute M.C.L. §750.159i;

    j.  Violation of statute M.C.L. §600.2919a;

    k.  Michigan's Consumer Protection Act, M.C.L. §445.901 *et. seq.*; and

    l.  Michigan's common law regarding conversion.

4.  This action is filed on behalf of Representative Plaintiffs and the proposed Class to recover damages, treble damages, civil penalties, disgorgement of gross receipts or profits, attorneys' fees, expenses, exemplary damages, declaratory judgment, and all other applicable remedies.

**THE PARTIES**

5.  Plaintiff, MARIAH WALL ("Wall"), is an individual residing in the City of Omaha, State of Nebraska.

3

6. Plaintiff, CHRISTOPHER BOSTON ("Boston"), is an individual residing in the City of Ann Arbor, State of Michigan.

7. Plaintiff, CRAIG MULHINCH ("Mulhinch"), is an individual residing in the City of Troy, State of Michigan.

8. The proposed class members, approximately 2,000 individuals, are citizens and residents of the United States who, like Wall, Boston, and Mulhinch, signed lease agreements with Defendants and/or provided security deposits at any time from September 15, 2009 through September 15, 2015.

9. Under Fed. R. Civ. P. 23, the proposed class is so numerous that joinder of all members is impracticable; there are questions of law or fact common to the proposed class; the claims or defenses of the Representative Plaintiffs are typical of the claims or defenses of the proposed class; the Representative Plaintiffs will fairly and adequately protect the interests of the proposed class; common questions predominate over questions effecting only individual members; and a class action is superior to other available methods of resolving the claims.

10. Upon information and belief, Defendant, MICHIGAN RENTAL, is a sole proprietorship, with a place of business in the City of Ann Arbor, State of Michigan.

11. Upon information and belief, Defendant, ZAKI JAMIL ALAWI ("Alawi"), at all times pertinent to this matter, is Michigan Rental's sole proprietor and resides in the City of Ann Arbor, State of Michigan.

12. Upon information and belief, Defendant ZA HOLDING COMPANY, LLC ("Holding Company"), at all times pertinent to this matter, is a Michigan limited liability company,

4

that has multiple subsidiaries and affiliates owned and controlled by Alawi, with a place of business in the City of Ann Arbor, State of Michigan.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over the class claims pursuant to 28 U.S.C. §1332(d)(2), as the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and any member of a class of plaintiffs is a citizen of a State different from any Defendant.

14. This Court has jurisdiction over the claims arising under the laws of the United States ("Federal Law Causes of Action") pursuant to 28 U.S.C. §1331, and pursuant to 18 U.S.C. §1964.

15. This Court has supplemental jurisdiction over the claims arising under state law ("State Law Causes of Action") pursuant to 28 U.S.C. §1367, because such claims are so closely related to the Federal Law Causes of Action that they form part of the same case or controversy under Article III of the United States Constitution.

16. This Court has jurisdiction to issue a declaratory judgment and/or injunction under 28 U.S.C. §2201.

17. Venue is proper in this judicial district under 28 U.S.C. §1391(b)(1) and 18 U.S.C. §1965(a), and pursuant to 15 U.S.C. §2619(a)(2), as all Defendants reside in the State of Michigan and in this judicial district.

18. Venue is proper in this judicial district under 28 U.S.C. §1391(b)(2) and 18 U.S.C. §1965(a), and pursuant to 15 U.S.C. §2619(a)(2), as this is the judicial district in which a substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of property that is the subject of this action is situated.

## FACTUAL BACKGROUND

19. The factual allegations are made with the requisite specificity required by the Federal Rules of Civil Procedure, as limited by the yet-to-be-discovered actions and omissions by Defendants.

20. In 2012, Wall was a full-time student at the University of Michigan in Ann Arbor.

21. On or about November 2012, Wall and other University of Michigan students entered into a rental lease agreement with Michigan Rental allowing occupancy in September 2013 at real property commonly known as 109 Glen #2, Ann Arbor, Michigan ("Wall Rental Property"). See paragraphs 1 and 2 of Rental Lease Agreement ("Wall Lease Agreement"), attached as **Exhibit 1**.

22. On or about November 2012, the Wall Rental Property was owned by Alawi.

23. On or about November 2012, approximately one year in advance of assuming occupancy, Wall caused a security deposit to be paid to Defendants by bank check.

24. On or about December 2014, ownership of the Wall Rental Property was transferred from Alawi to 109 Glen ZA, LLC, a limited liability company solely managed by Alawi.

25. In 2013, Boston was a full-time student at the University of Michigan in Ann Arbor.

26. On or about January 2013, Boston and other University of Michigan students entered into a rental lease agreement with Michigan Rental allowing occupancy in September 2013 at real property commonly known as 515 N Division, Ann Arbor, Michigan ("Boston Rental Property"). See paragraphs 1 and 2 of Rental Lease Agreement ("Boston Lease Agreement"), attached as **Exhibit 2**.

27. On or about November 2012, ownership of the Boston Rental Property was transferred from Alawi to 515 N Division, LLC, a limited liability company solely managed by Alawi.

6

28. On or about January 2013, approximately eight months in advance of assuming occupancy, Boston caused a security deposit to be paid to Defendants by cash.

29. In 2012, Mulhinch was a full-time student at the University of Michigan in Ann Arbor.

30. On or about November 2012, Mulhinch and other University of Michigan students entered into a rental lease agreement with Michigan Rental allowing occupancy in September 2013 at real property commonly known as 503 E Ann Street, Ann Arbor, Michigan ("Mulhinch Rental Property"). See paragraphs 1 and 2 of Rental Lease Agreement ("Mulhinch Lease Agreement"), attached as **Exhibit 3**.

31. On or about November 2012, the Mulhinch Rental Property was owned by Alawi.

32. On or about November 2012, approximately one year in advance of assuming occupancy, Mulhinch caused a security deposit to be paid to Defendants by bank check.

33. On or about August 2013, ownership of the Mulhinch Rental Property was transferred from Alawi to 503 E Ann, LLC, a limited liability company solely managed by Alawi.

34. The Wall Lease Agreement, Ex. 1, the Boston Lease Agreement, Ex. 2, and the Mulhinch Lease Agreement, Ex. 3, and accompanying documents, and, upon information and belief, all leases and accompanying documents of the proposed Class are *prime facie* unlawful under Michigan laws and City of Ann Arbor ordinance, including but not limited to:

   a. M.C.L. § 554.608(4);

   b. M.C.L. § 554.601b;

   c. M.C.L. § 554.603; and

   d. Section 8.524 of the City of Ann Arbor Housing Code.

35. The Wall Rental Property, the Boston Rental Property, the Mulhinch Rental Property, and approximately ninety (90) other residential rental properties with approximately 420 rental

beds in Ann Arbor, Michigan (collectively the "Enterprise Properties") are currently owned by Alawi or limited liability companies that are solely managed and owned by Alawi, and leased by Michigan Rental. See list of Enterprise Properties, attached as **Exhibit 4**.

36. The Enterprise Properties are leased and rented primarily to University of Michigan students, fellows, and its employees.

37. All the Enterprise Properties are "target housing" constructed before 1978, Ex. 4, and are regulated by and under the Residential Lead-Based Paint Hazard Reduction Act of 1992, 42 U.S.C. §§ 4851-4856, and accompanying regulations and the Toxic Substances Control Act, 15 U.S.C. §§ 2601-2692, and accompanying regulations.

38. The Enterprise Properties require payments of approximately $378,000.00 in security deposits per lease term, and, for purposes of this action from September 15, 2009 through September 15, 2015, equates to an amount in excess of $3,000,000.00.

39. The amounts claimed as damages include $3,000,000.00 in security deposits, plus exemplary damages under Michigan laws, plus attorney fees under 18 U.S.C. §1964(c) and M.C.L. §600.2919a, plus treble damages under 18 U.S.C. §1964(c) and M.C.L. §600.2919a, plus such other damages as may be awarded.

40. As stated more fully below, by using the Enterprise Properties and subsequent lease agreements, Defendants, for years, have engaged in a course of conduct contrary to law in order to derive income, other personal benefits, and/or to boost their financial net worth.

41. Such course of conduct includes, but is not limited to, unlawfully using millions of dollars of tenant security deposits for Defendants' own personal gains and benefits.

## CLASS ACTION ALLEGATIONS

42. Representative Plaintiffs incorporate the foregoing paragraphs as though fully set forth herein.

43. Representative Plaintiffs bring this action on their own behalf and on behalf of a class of other persons similarly situated pursuant to F.R. Civ. P. 23 (a) and (b).

44. Specifically, Representative Plaintiffs seek to certify a class for the purpose of asserting claims alleged in this Complaint on a common basis.

45. Representative Plaintiffs seek certification of the following proposed class which they reserve the right to modify or amend before the Court determines whether certification is appropriate:

> **"Class": All individuals who paid or had security deposits and/or who had signed lease agreements with Defendants at any time from September 15, 2009 through September 15, 2015, including any of Defendants' agents, affiliates, successors, assigns or associations of either Michigan Rental or Alawi, for residential real property in the City of Ann Arbor, County of Washtenaw, State of Michigan, including the Enterprise Properties. The term "affiliates" means any corporations, limited liability companies, trusts, joint ventures, associations, companies, partnerships, or other entity in which Michigan Rental or Alawi own directly or indirectly through one or more intermediaries, any ownership or equity interest.**

46. Plaintiffs bring this class action seeking damages, disgorgement and other equitable relief on behalf of the Class.

47. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of the Federal Rules of Civil Procedure Rule 23(a) and (b).

48. Numerosity - Fed. R. Civ. P. 23(a)(1). The exact number or identification of the Class members is presently unknown. On information and belief the Class includes

approximately 2,000 individuals.  The identity of the class members is ascertainable and can be determined based on available records.

49. Predominance of Common Questions - Fed. R. Civ. P. 23(a)(2) and (b)(3).  The questions of law and fact common to the Class predominate over questions affecting only individual Class members, and include, but are not limited to, the following:  whether equitable remedies including injunctive relief and disgorgement are warranted and the nature of such relief.

50. Typicality - Fed. R. Civ. P. 23(a)(3).  Representative Plaintiffs' claims are typical of the claims of the Class because Representative Plaintiffs and all Class members were subject to and affected by Defendants' policies and practices alleged herein.

51. Adequacy - Fed. R. Civ. P. 23(a)(4); 23(g)(1).  Representative Plaintiffs are adequate representatives of the Class because they fit within the class definition and their interests do not conflict with the interests of the members of the class they seek to represent.  Representative Plaintiffs are represented by experienced class Counsel.

52. Superiority - Fed. R. Civ. P. 23(b)(3).  The class action is the best available method for the efficient adjudication of this litigation because individual litigation of Class members' claims would be impracticable and individual litigation would be unduly burdensome to the courts.  Additionally, without the class action vehicle the Class would have no reasonable remedy. Further, individual litigation has the potential to result in inconsistent or contradictory judgments.  A class action in this case presents fewer management problems and provides the benefits of single adjudication of claims, economies of scale, and comprehensive supervision by a single court.

53. Class certification is appropriate under F.R. Civ. P. 23(b)(2) and (c)(4) because Defendants have acted or refused to act on grounds generally applicable to the Class.

## COUNT I

### RICO 18 U.S.C. § 1961 *et. seq.*

54. Representative Plaintiffs and the Class incorporate the foregoing paragraphs as though fully set forth herein.

55. Representative Plaintiffs have standing to assert this claim because their injuries and those injuries suffered by the Class were due to Defendants' commission of the predicate acts alleged in this pleading.

56. The "Enterprise" consists of Michigan Rental and Alawi and the Holding Company and its subsidiaries and affiliates as an association-in-fact, each carrying out a separate role, but all sharing the common purpose of obtaining and using interest-free, lien-free, tax-free, fee-free money contrary to law, as explained more fully below; or alternatively, the "Enterprise" is Michigan Rental.

57. The conduct of the Enterprise includes, but is not limited to, the following:

   a. Since 1987, the Enterprise has leased residential properties to people in Ann Arbor, Michigan.

   b. The Enterprise maintains an office at Alawi's home in Ann Arbor, Michigan.

   c. The Enterprise holds an interest in the Enterprise Properties, owned by Alawi or a limited liability company that is solely managed by Alawi.

   d. The Enterprise leases the Enterprise Properties in the name of Michigan Rental.

   e. Michigan Rental holds itself out distinctly separate and has payroll, employs several people who perform office administrative work, employs several people

11

who perform maintenance and repair work at the Enterprise Properties, utilizes the services of contractors to clean and perform other services at the Enterprise Properties, and maintains a website exclusively to advertise for rental of the Enterprise Properties.

f.   The Wall Lease Agreement, the Boston Lease Agreement, and the Mulhinch Lease Agreement, and upon information and belief all leases of the Enterprise Properties for the Class, named Michigan Rental as the "Landlord" and all payments of security deposits and rents under such leases were to be made payable to "Michigan Rental."

g.   The Enterprise requires tenants to enter into lease agreements and pay security deposits to lease Enterprise Properties, in most instances several months before occupancy begins.

h.   The Enterprise required Representative Plaintiffs to pay security deposits to lease their respective Enterprise Properties several months before occupancy began.

i.   Upon information and belief, the Enterprise required each of the Class members to pay a security deposit to lease their respective Enterprise Properties several months before occupancy began.

j.   Representative Plaintiffs and the Class entrusted Defendants with monies for the sole purpose of a security deposit, pursuant to terms of their respective rental lease agreements and Michigan law.

k.   The Wall Lease Agreement, the Boston Lease Agreement, and the Mulhinch Lease Agreement, stated that the security deposits would be deposited by the Enterprise at Michigan Commerce Bank in Ann Arbor, Michigan.

l.  Upon information and belief, the Class lease agreements for their respective Enterprise Properties stated that security deposits would be deposited by the Enterprise at Michigan Commerce Bank in Ann Arbor, Michigan.

m.  The security deposits required under the Wall Lease Agreement, the Boston Lease Agreement, and the Mulhinch Lease Agreement were or were not deposited at Michigan Commerce Bank in Ann Arbor, Michigan, and, in any event, were comingled with Defendants' other assets and cash, and/or used by Defendants for their own purpose and benefit, as explained more fully below.

n.  At no time did Representative Plaintiffs or the Class authorize Defendants to take or use their deposited funds for any other purpose.

o.  Because security deposits are the lawful property of tenants like Representative Plaintiffs, unless the landlord (like Michigan Rental) establishes a right to the deposit or portions thereof, Defendants had an obligation to maintain, preserve, and segregate the security deposit funds paid by Representative Plaintiffs and the Class, which were subject to specific conditions and the express terms of Michigan Law.

p.  Upon information and belief, and contrary to the Enterprise's representation that Wall's security deposit would be deposited into the Michigan Commerce Bank in Ann Arbor, Michigan, and before or while Wall was occupying the Wall Rental Property, the Enterprise never deposited, or withdrew or transferred Wall's security deposit from Michigan Commerce Bank, without prior notice to, or permission from Wall, and contrary to M.C.L. §554.604(1), M.C.L. §750.181, M.C.L. §750.535, and/or M.C.L. §750.159i.

q.  Upon information and belief, and contrary to the Enterprise's representation that
Boston's security deposit would be deposited into the Michigan Commerce Bank
in Ann Arbor, Michigan, and before or while Boston was occupying the Boston
Rental Property, the Enterprise never deposited, or withdrew or transferred
Boston's security deposit from Michigan Commerce Bank, without prior notice to,
or permission from Boston, and contrary to M.C.L. §554.604(1), M.C.L. §750.181,
M.C.L. §750.535, and/or M.C.L. §750.159i.

r.  Upon information and belief, and contrary to the Enterprise's representation that
Mulhinch's security deposit would be deposited into the Michigan Commerce Bank
in Ann Arbor, Michigan, and before or while Mulhinch was occupying the
Mulhinch Rental Property, the Enterprise never deposited, or withdrew or
transferred Mulhinch's security deposit from Michigan Commerce Bank, without
prior notice to, or permission from Mulhinch, and contrary to M.C.L. §554.604(1),
M.C.L. §750.181, M.C.L. §750.535, and/or M.C.L. §750.159i.

s.  Upon information and belief, and contrary to the Enterprise's representations that
the Class security deposits would be deposited into the Michigan Commerce Bank
in Ann Arbor, Michigan, and before or while the Class was occupying the
Enterprise Properties, the Enterprise never deposited, or withdrew or transferred
the Class security deposits from Michigan Commerce Bank, without prior notice
to, or permission from Class members, and contrary to M.C.L. §554.604(1),
M.C.L. §750.181, M.C.L. §750.535, and/or M.C.L. §750.159i.

t.  Pursuant to M.C.L. §554.604(1), before obtaining a Surety Bond on March 7, 2014,
the Enterprise was precluded from not depositing, or withdrawing or transferring

14

and otherwise using the Representative Plaintiffs' and Class' security deposits at Michigan Commerce Bank.

u. Upon information and belief, and contrary to Michigan law, Defendants intentionally, knowingly and unlawfully exerted a distinct act of dominion over the security deposit funds, for the wrongful benefit of themselves and others, by wrongfully releasing, converting, embezzling, dissipating and distributing those funds, inconsistent with the rights of Representative Plaintiffs and the Class, and without fulfilling specific conditions or the express terms of Michigan law. See admissions by Defendants in Washtenaw County Circuit Court Case No. 14-68-CZ, whereby Defendants admit that, on one or more days after December 3, 2012 and through March 6, 2014, the average daily balance of the bank account to which they represented they would deposit Representative Plaintiffs' and the Class' security deposits (over $750,000.00 in security deposits per overlapping lease terms) had an ending balance of less than $912.50, attached as **Exhibit 5**.

v. Upon information and belief, and contrary to 18 U.S.C. §1962(a) and 18 U.S.C. §1956, after not depositing, or withdrawing or transferring Representative Plaintiffs' and the Class' security deposits from Michigan Commerce Bank, the Enterprise, knowing that the monies involved in the transactions represented the proceeds of some form of unlawful activity and intending to promote the carrying on of the unlawful activity, or knowing that the transactions were designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the security deposits, which were not the property of the Enterprise, withdrew or transferred by wire or other means the security deposit funds received

from Representative Plaintiffs and the Class for the Enterprise's own purposes and benefit, including, but not limited to, using such security deposits to boost the Enterprise's financial net worth, to pay debts and liabilities, and/or to purchase Enterprise assets from which the Enterprise derived income to use or invest in the operation of the Enterprise.

w. Upon information and belief, and contrary to 18 U.S.C. §1962(a), 18 U.S.C. §1962(c), and 18 U.S.C. §1956, after not depositing, or withdrawing or transferring Representative Plaintiffs' and the Class' security deposits from Michigan Commerce Bank, the Enterprise, particularly Alawi, knowing that the monies involved in the transactions represented the proceeds of some form of unlawful activity and intending to promote the carrying on of the unlawful activity, or knowing that the transactions were designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the security deposits, which were not the property of the Enterprise, personally withdrew or transferred the security deposit funds received from Representative Plaintiffs and the Class for the Enterprise's own purposes and benefit, including, but not limited to, using such security deposits to boost the Enterprise's financial net worth, to pay debts and liabilities, and/or to purchase Enterprise assets from which the Enterprise derived income to use or invest in the operation of the Enterprise.

x. Some of the real property assets purchased by the Enterprise after December 3, 2012 and through March 6, 2014, when the average daily balance of the bank account to which the Enterprise represented it would deposit Representative

16

Plaintiffs' and the Class' security deposits (over $750,000.00 in security deposits per overlapping lease terms) had an ending balance of less than $912.50, include the following:

1.  On or about January 18, 2013, Alawi purchased the Enterprise Property commonly known as 310 N First for $266,000.00;

2.  On or about March 28, 2013, 911 ZA Oakland, LLC, an entity solely owned and managed by Alawi, purchased the Enterprise Property commonly known as 911 Oakland for $1,235,000.00;

3.  On or about March 29, 2013, Alawi purchased the Enterprise Property commonly known as 504 Lawrence for $400,000.00;

4.  On or about June 7, 2013, Alawi purchased the Enterprise Property commonly known as 716 Arch for $350,000.00;

5.  On or about August 15, 2013, 508-510 Lawrence, LLC, an entity solely owned and managed by Alawi, purchased the Enterprise Property commonly known as 508 Lawrence for $2,080,000.00;

6.  On or about August 15, 2013, 403 N State, LLC, an entity solely owned and managed by Alawi, purchased the Enterprise Property commonly known as 403 N State for $900,000.00;

7.  On or about August 15, 2013, 1524 Geddes ZA, LLC, an entity solely owned and managed by Alawi, purchased the Enterprise Property commonly known as 1524 Geddes for $395,000.00;

8.  On or about October 22, 2013, 1315 Cambridge Road, LLC, an entity solely owned and managed by Alawi, purchased the

> Enterprise Property commonly known as 1315 Cambridge for $800,000.00; and
>
> 9. On or about October 24, 2013, 314 E Summit, LLC, an entity solely owned and managed by Alawi, purchased the Enterprise Property commonly known as 314 E Summit for $200,000.00.

y.  Upon information and belief, the Enterprise boosted its financial net worth by misrepresenting to third parties that it owned funds on deposit (or not), in the amount of the security deposits it received from Representative Plaintiffs and the Class, when, in fact, those security deposits were the property of Representative Plaintiffs and the Class and not Enterprise property.

z.  Upon information and belief, Alawi boosted his financial net worth by misrepresenting to third parties that he owned funds on deposit (or not), in the amount of the security deposits the Enterprise received from Representative Plaintiffs and the Class, which he commingled with his own funds, when, in fact, those security deposits were the property of Representative Plaintiffs and the Class and not Alawi's property.

aa. Upon information and belief, and contrary to 18 U.S.C. §1962(a) and 18 U.S.C. §1344, the Enterprise knowingly executed a scheme or artifice to obtain Representative Plaintiffs' and the Class' security deposits, under the custody or control of Michigan Commerce Bank, by means of false or fraudulent pretenses, representations, or promises, to boost the Enterprise's financial net worth, to pay debts and liabilities, and/or to purchase Enterprise assets from which the Enterprise derived income to use or invest in the operation of the Enterprise.

bb. Upon information and belief, and contrary to 18 U.S.C. §1962(a), 18 U.S.C. § 1962(c), and 18 U.S.C. §1344, the Enterprise knowingly executed a scheme or artifice, carried out by Alawi, to obtain Representative Plaintiffs' and the Class' security deposits, under the custody or control of Michigan Commerce Bank, by means of false or fraudulent pretenses, representations, or promises, to boost the Enterprise's financial net worth, to pay debts and liabilities, and/or to purchase Enterprise assets from which the Enterprise derived income to use or invest in the operation of the Enterprise.

cc. Upon information and belief, and contrary to 18 U.S.C. §1962(c), 18 U.S.C. §1341, 18 U.S.C. §1343, and 18 U.S.C. §1344, the Enterprise's scheme or artifice to obtain Representative Plaintiffs' and the Class' security deposits, under the custody or control of Michigan Commerce Bank, was carried out by Alawi or employees of Michigan Rental at Alawi's direction, who conducted the banking transactions for the Enterprise, including but not limited to endorsing and depositing and cashing checks received from numerous banks across the United States via U.S. Mail, wire, and other means from Representative Plaintiffs and the Class, depositing (or not) cash received via U.S. Mail, wire, and other means from Representative Plaintiffs and the Class, and withdrawing or transferring by wire or other means the security deposit funds received from Representative Plaintiffs and the Class for the Enterprise's own purposes and benefit, including, but not limited to, using such security deposits to boost the Enterprise's financial net worth, to pay debts and liabilities, and/or to purchase Enterprise assets from which the Enterprise derived income to use or invest in the operation of the Enterprise.

dd. Upon information and belief, and contrary to 18 U.S.C. §1962(c), 18 U.S.C. §1341, the Enterprise's scheme or artifice to obtain Representative Plaintiffs' and the Class' security deposits, under the custody or control of Michigan Commerce Bank, also required the Enterprise to return security deposits to some tenants, which Alawi, or employees of Michigan Rental at Alawi's direction, caused to be sent or delivered to Representative Plaintiffs and the Class via U.S. Mail, sometimes outside the state of Michigan as in the case of Plaintiff Wall.

ee. The dates of the predicate acts, as can be determined through discovery, are continuous from September 15, 2009 through September 15, 2015, with the cycle beginning with the influx of cash from security deposits received in the Fall of each year, which, upon information and belief, is used by the Enterprise throughout the lease terms to acquire Enterprise assets, and the Enterprise reserving enough of the income generated from the Enterprise assets to return any security deposits or portions of security deposits that are not otherwise forfeited by the Representative Plaintiffs and Class, who, for example, may not pay their last month's rent.

ff. The Enterprise's fraudulent scheme of deriving income and benefit by unlawfully collecting millions of dollars in security deposits from Representative Plaintiffs and the Class, several months before their occupancies began, and using such security deposits for their own purpose and benefit contrary to law, had the purpose and direct result of the Enterprise obtaining interest-free, lien-free, tax-free, fee-free money contrary to law.

gg. But for the Enterprise's conduct, Representative Plaintiffs and the Class should not have paid the security deposits and, by reason of Defendants' operation or

20

management of the Enterprise through a pattern of racketeering, Representative Plaintiffs and the Class have suffered monetary compensable damages including, but not limited to, the full amount of the security deposits taken and all lost profits and interest thereon.

58. The security deposits paid by Representative Plaintiffs and the Class were paid from regulated national banking institutions, and/or non-Michigan based banks, and/or people who reside outside of Michigan, and/or people who had security deposits paid and subsequently moved out of Michigan.

59. The Enterprise obtained Representative Plaintiffs' and, upon information and belief, the Class's security deposits, in some instances, through U.S. Mail or through wire or other electronic transfer.

60. The security deposits of Representative Plaintiffs, and upon information and belief the Class, were to be deposited into Michigan Commerce Bank, a bank wholly owned by Capital Bancorp.

61. Capital Bancorp for all times pertinent hereto was a Federal Deposit Insurance Corporation ("FDIC") bank and regulated pursuant thereto, traded on the New York Stock Exchange under the symbol "CBC," and regulated by the Security Exchange Commission.

62. On March 31, 2010, Capital Bancorp entered into a Stipulation and Consent to the Issuance of a Consent Order with representatives of the FDIC and Office of Financial and Insurance Regulation for the State of Michigan.

63. Plaintiff Wall's security deposit was paid by check from Chase Bank to Defendants and endorsed by one or more Defendants for deposit in Michigan Commerce Bank, and the

U.S. Mail was used to transmit such security deposit as were further rental checks from Plaintiff Wall to Defendants.

64. Plaintiff Boston's security deposit was paid in cash to Defendants.

65. Plaintiff Mulhinch's security deposit was paid by check to Defendants and endorsed by one or more Defendants for deposit in Michigan Commerce Bank.

66. Upon information and belief, the Class security deposits were paid from FDIC insured banking institutions and the U.S. Mail and other electronic means were used to transmit such security deposits.

67. The Enterprise's above-described conduct, in addition to the commission of the following predicate acts, involving criminal and state offenses, is racketeering activity as defined by 18 U.S.C. §1961(1):

    a. Contrary to criminal statute M.C.L. §750.181, the Enterprise received and collected money (i.e. security deposits) that was the property of Representative Plaintiffs, and disposed of, or converted such security deposits to its own use, or took or secreted such security deposits with the intent to embezzle or convert to its own use, without the consent of Representative Plaintiffs;

    b. Contrary to criminal statute M.C.L. §750.181, the Enterprise received and collected money (i.e. security deposits) that was the property of the Class, and disposed of, or converted such security deposits to its own use, or took or secreted such security deposits with the intent to embezzle or convert to its own use, without the consent of the Class;

    c. Contrary to criminal statute M.C.L. §750.535, the Enterprise received, possessed, concealed, or aided in the concealment of stolen, embezzled, or

converted Representative Plaintiffs' security deposits, when it knew or should have known that the security deposits were stolen, embezzled, or converted;

d. Contrary to criminal statute M.C.L. §750.535, the Enterprise received, possessed, concealed, or aided in the concealment of stolen, embezzled, or converted the Class' security deposits when the Enterprise knew or should have known that the security deposits were stolen, embezzled, or converted;

e. Contrary to criminal statute M.C.L. §750.159i(1), a person employed by or associated with the Enterprise knowingly conducted or participated in the affairs of the Enterprise directly or indirectly through a pattern of racketeering activity;

f. Contrary to 18 U.S.C. §1956 (Laundering of Monetary Instruments) Defendants knew that the monetary instrument or funds represented the proceeds of some form of unlawful activity and knew that such transportation, transmission, or transfer was designed in whole or in part—(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity;

g. Contrary to 18 U.S.C. §1341 (Mail Fraud) using U.S. Mail in furtherance of a scheme to defraud;

h. Contrary to 18 U.S.C. §1343 (Wire Fraud) using electronic and wire means in furtherance of a scheme to defraud; and/or

i. Contrary to 18 U.S.C. §1344 (Bank Fraud) knowingly executing, or attempting to execute, a scheme or artifice to obtain moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a

financial institution, by means of false or fraudulent pretenses, representations, or promises.

68. The Enterprise's continued conduct for years of at least two acts of racketeering activity, as described above, prior to obtaining a Surety Bond on March 7, 2014, and also thereafter since the Enterprise had unlawfully collected the security deposits, was a pattern of racketeering activity, as defined by 18 U.S.C. §1961(5), as follows:

    a. The Enterprise's purpose is to derive income and other benefits by using Representative Plaintiffs' and the Class' security deposits without Representative Plaintiffs' and the Class' permission or knowledge and contrary to law;

    b. The Enterprise enters into lease agreements with Representative Plaintiffs and the Class;

    c. Beginning in September 2009, Representative Plaintiffs and the Class provide millions of dollars in security deposit monies to the Enterprise under the terms of their respective lease agreements;

    d. The Enterprise defrauds the tenants by not depositing, or depositing and withdrawing or transferring Representative Plaintiffs' and the Class' security deposit monies from the financial institution where the Enterprise represents it will keep the funds under the terms of their respective lease agreements, and contrary to law;

    e. The Enterprise carries out its scheme to defraud using banks, U.S. Mail and interstate wires;

    f. The Enterprise uses Representative Plaintiffs' and the Class' security deposit monies, contrary to law, to boost the Enterprise's financial net worth, to pay debts

24

and liabilities, and/or to purchase Enterprise assets from which the Enterprise derived income to use or invest in the operation of the Enterprise.

69. But for Defendants' conduct, Representative Plaintiffs and the Class should not have paid a security deposit and have suffered monetary compensable damages including, but not limited to, the full amount of such security deposits taken and all lost profits and interest thereon.

THEREFORE, Representative Plaintiffs and the Class request judgment in their favor and against Defendants in whatever act it is found to be entitled including compensatory, trebled, and punitive damages, and attorney fees and costs.

## COUNT II

### VIOLATION OF STATE LAW - MICHIGAN'S LANDLORD AND TENANT RELATIONSHIPS ACT, M.C.L. §554.601 *et. seq.*

70. Representative Plaintiffs and the Class incorporate the foregoing paragraphs as though fully set forth herein.

71. As part of their fraudulent scheme to derive income, and/or benefit and boost their financial net worth, Defendants required Representative Plaintiffs and the Class to pay a security deposit several months in advance of assuming occupancy.

72. Michigan's Landlord And Tenant Relationships Act, M.C.L. §554.601 *et. seq.* ("LTRA") provides, among other things, that a security deposit is the lawful property of a tenant, unless the landlord (like Michigan Rental) establishes a right to the deposit or portions thereof. M.C.L. §554.605.

73. The LTRA also requires a landlord to deposit a security deposit into a financial institution, and only allows a landlord to use the monies so deposited if the landlord first deposits with

Michigan's Secretary of State a cash bond or surety bond to secure the entire deposits up to $50,000.00 and 25% of any amount exceeding $50,000.00. M.C.L. §554.604(1).

74. As part of their fraudulent scheme to derive income, benefit and/or boost their financial net worth, these Defendants have refused, neglected, and failed to comply with the requirements of M.C.L. §554.604(1) and, prior to obtaining a Uniform Landlord Security Deposit Surety Bond on March 7, 2014, withdrew or transferred and used Representative Plaintiffs' and the Class' security deposits, that were required to be on deposit at Michigan Commerce Bank, in excess of millions of dollars, for their own benefit and purposes.

75. Defendants' fraudulent scheme also includes the omission of essential provisions of both Michigan law and the Ann Arbor Housing Code from their lease agreements to the further detriment of Representative Plaintiffs and the Class, including the provisions and notices required by M.C.L. §554.608(4), M.C.L. §554.601b, M.C.L. §554.603, Section 8.524 of the City of Ann Arbor Housing Code, and Section 19.5 of the City of Ann Arbor Charter.

76. But for Defendants' conduct, Representative Plaintiffs and the Class should not have paid a security deposit and have suffered monetary compensable damages including, but not limited to, the full amount of such security deposits taken and all lost profits and interest thereon.

THEREFORE, Representative Plaintiffs and the Class request judgment in their favor and against Defendants in whatever act it is found to be entitled including compensatory, trebled, and exemplary damages, and attorney fees and costs.

## COUNT III

### STATUTORY CONVERSION - M.C.L. §600.2919a

77. Representative Plaintiffs and the Class incorporate the foregoing paragraphs as though fully set forth herein.

78. Defendants deposited security deposit funds from Representative Plaintiffs and the Class, or stated they would deposit security deposit funds from Representative Plaintiffs and the Class, into Michigan Commerce Bank, pursuant to rental lease agreements.

79. At no time did Representative Plaintiffs or the Class authorize Defendants to take or use their deposited funds for any other purpose.

80. Unbeknownst to Representative Plaintiffs, Defendants, either did not deposit, or withdrew or transferred the deposited funds and converted, stole or embezzled them to their own use and benefit, or, alternatively, received, possessed, concealed, or aided in the concealment of the funds or wrongfully withdrawn funds, contrary to M.C.L. §600.2919a(1)(a).

81. Defendants have admitted that on one or more days from December 3, 2012 through March 6, 2014, the average daily balance of the bank account to which they represented they would deposit the Representative Plaintiffs' and Class' security deposits (over $750,000.00 in security deposits per overlapping lease terms) had an ending balance of less than $912.50. Ex 5.

82. Upon information and belief, Defendants took the security deposit funds periodically and used such funds for their own use from September 15, 2009 through September 15, 2015.

83. As a direct and proximate result of Defendants' unlawful actions, Representative Plaintiffs and the Class have suffered monetary compensable damages including, but not limited to, the full amount of such security deposits taken and all lost profits and interest thereon.

THEREFORE, Representative Plaintiffs and the Class request judgment in their favor and against Defendants in whatever act it is found to be entitled including compensatory, trebled, and exemplary damages, and attorney fees and costs.

## COUNT IV

## VIOLATION OF MICHIGAN'S COMMON LAW REGARDING CONVERSION

84. Representative Plaintiffs and the Class incorporate the foregoing paragraphs as though fully set forth herein.

85. Representative Plaintiffs and the Class entrusted Defendants with monies for the sole purpose of a security deposit, pursuant to the obligations of their respective rental lease agreements.

86. Defendants deposited or stated they would deposit security deposit funds from Representative Plaintiffs and the Class into Michigan Commerce Bank, pursuant to their respective rental lease agreements.

87. At no time did Representative Plaintiffs or the Class authorize Defendants to take or use their deposited funds for any other purpose.

88. The funds that Defendants deposited or stated they would deposit into Michigan Commerce Bank were to be released only under specific conditions and the express terms of Michigan Law.

89. Because a security deposit is the lawful property of a tenant, unless the landlord establishes a right to the deposit or portions thereof, Defendants had an obligation to maintain, preserve, and segregate the security deposit funds, which were to be released only under specific conditions and the express terms of Michigan Law.

90. Contrary to Michigan law, Defendants intentionally, knowingly and unlawfully exerted a distinct act of dominion over the security deposit funds, for the wrongful benefit of themselves and others, by wrongfully releasing, converting, embezzling, dissipating and distributing those funds, inconsistent with the rights of Representative Plaintiffs and the Class, and without fulfilling specific conditions or express terms of Michigan laws. Ex. 5.

91. Such wrongful, unauthorized and unlawful release, embezzlement, dissipation, and distribution of security deposit funds amounts to a common law conversion of property.

92. As a direct and proximate result of Defendants' unlawful actions, Representative Plaintiffs and the Class have suffered monetary compensable damages.

THEREFORE, Representative Plaintiffs and the Class request judgment in their favor and against Defendants in whatever act it is found to be entitled including compensatory, trebled, and exemplary damages, and attorney fees and costs.

## COUNT V

### VIOLATION OF STATE LAW - MICHIGAN'S CONSUMER PROTECTION ACT, M.C.L. §445.901 *et. seq.*

93. Representative Plaintiffs and the Class incorporate the foregoing paragraphs as though fully set forth herein.

94. Representative Plaintiffs and the Class are persons within the meaning of the Michigan Consumer Protection Act ("MCPA"), M.C.L. §445.902(1)(d).

95. Defendants have engaged in trade or commerce within the meaning of the MCPA, M.C.L. §445.902(1)(g), as they conduct a business of providing goods, property or service primarily for personal, family or household purposes by renting real property for residential housing.

29

96. As more fully set forth above, Defendants neglected and/or refused to comply with Michigan State laws and the City of Ann Arbor local ordinances regarding notices and the rental and leasing of residential real property; consequently, and as defined by M.C.L. §445.903(1), Defendants have engaged in unfair, unconscionable, or deceptive methods, acts, or practices including, but not necessarily limited to, the following:

    a.  By causing a probability of confusion or of misunderstanding as to the legal rights, obligations, or remedies of a party to a transaction like Representative Plaintiffs and the Class, by acting inconsistent with their rights, and without fulfilling specific conditions or the express terms of Michigan Law; and/or

    b.  By failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer like Representative Plaintiffs and the Class, and which fact could not reasonably be known by them, such that Defendants' had no intention of complying with the requirement of Michigan laws and Ann Arbor ordinances; and/or

    c.  By entering into a consumer transaction, particularly Defendants' lease agreement, in which Representative Plaintiffs and the Class waive or purport to waive a right, benefit, or immunity provided by Michigan laws, the Landlord and Tenant Relationships Act, and Ann Arbor ordinances; and/or

    d.  By failing to promptly restore to the person or persons entitled to the security deposits, after Defendants' right to the security deposits was terminated or never existed, as required by M.C.L. §554.604 and M.C.L. §445.903(u).

97. As a direct and proximate result of Defendants' unlawful actions, Representative Plaintiffs and the Class have suffered compensable damages.

98. Representative Plaintiffs and the Class seek entry of a declaratory judgment that Defendants' deceptive methods, acts, and/or practices are in violation and utter disregard of, and in direct contravention to, Section 3 (and otherwise) of the MCPA.

THEREFORE, Representative Plaintiffs and the Class request entry of a declaratory judgment, and a judgment for monetary damages in their favor and against Defendants in whatever act it is found to be entitled including compensatory, trebled, and exemplary damages, and attorney fees and costs.

## COUNT VI

### EQUITABLE RELIEF - UNJUST ENRICHMENT, RESTITUTION, CONSTRUCTIVE TRUST AND ACCOUNTING

99. Representative Plaintiffs and the Class incorporate the foregoing paragraphs as though fully set forth herein.

100. Defendants have received the benefit of payments of security deposits under the rental lease agreements with Representative Plaintiffs and the Class, several months in advance of assuming occupancy.

101. If Defendants are allowed to retain the benefits without complying with Michigan law, Defendants have been and will continue to be unjustly enriched at the expense of the Representative Plaintiffs and the Class under their rental lease agreements.

102. Defendants have been unjustly enriched in an amount equal to the security deposits they have collected under the rental lease agreements.

103. Defendants have derived income and collected millions of dollars from the Representative Plaintiffs and the Class, several months in advance of assuming occupancy, and used such

security deposits for their own purpose, interest-free, lien-free, tax-free, fee-free, all to the detriment of Representative Plaintiffs and the Class.

104. In the interest of fairness, justice and equity, Defendants should be ordered to provide an accounting, as the court deems necessary, and to pay Representative Plaintiffs and the Class all monies which were misappropriated, withdrawn, transferred and used without prior notice to, or permission of Representative Plaintiffs and the Class, and unlawfully or inequitably retained and to make restitution for the same.

105. Equitable principles also require that all such ill-gotten gain should be declared by the Court to be held in a constructive trust for the benefit of Representative Plaintiffs and the Class, and that Defendants should be enjoined from using, transferring, selling or otherwise dissipating any such funds and *any assets* which have been purchased with such funds or through which such funds have been laundered.

THEREFORE, for all the above reasons, Representative Plaintiffs and the Class request relief as follows:

A. That the Court enter a declaratory judgment declaring that Defendants have been unjustly enriched at the expense of the Representative Plaintiffs and the Class;

B. That the Court require Defendants to provide an accounting of all monies which were misappropriated, withdrawn, transferred and used without prior notice to, or permission of Representative Plaintiffs and the Class;

C. That the Court require Defendants to make restitution to Representative Plaintiffs and the Class of all monies which were misappropriated, withdrawn, transferred and used without prior notice to, or permission of Representative Plaintiffs and the Class;

32

D.  That the Court enter an order requiring any and all profits derived by Defendants' acts to be held in a constructive trust for the benefit of Representative Plaintiffs and the Class; and

E.  That the Court enter an order enjoining Defendants from using, transferring, selling or otherwise dissipating any ill-gotten gain and *any assets* which have been purchased with such funds or through which such funds have been laundered.

Dated: 9/15/15

Respectfully submitted,

THE TROY LAW FIRM

DANIEL E. CHAPMAN (P41043)
KIMBERLY A. COCHRANE (P73032)
Attorneys for Plaintiffs
888 W Big Beaver Road, Ste 1400
Troy, MI 48084
(248) 244-9100
dchapman@troylawfirm.com
kcochrane@troylawfirm.com


COOPER LAW FIRM, PLLC

JOHN J. COOPER (P53738)
Attorneys for Plaintiffs
1615 W Big Beaver Road, Ste A6
Troy, MI 48084
(248) 822-2212
johnjcooper@sbcglobal.net


## DEMAND FOR JURY TRIAL

Representative Plaintiffs, by their attorneys, THE TROY LAW FIRM and COOPER LAW FIRM, PLLC, on behalf of themselves and all other similarly situated persons, hereby demand a trial by jury with regard to all claims that are so triable.

Dated: 9/15/15

Respectfully submitted,

THE TROY LAW FIRM

DANIEL E. CHAPMAN (P41043)
KIMBERLY A. COCHRANE (P73032)
Attorneys for Plaintiffs
888 W Big Beaver Road, Ste 1400
Troy, MI 48084
(248) 244-9100
dchapman@troylawfirm.com
kcochrane@troylawfirm.com


COOPER LAW FIRM, PLLC

JOHN J. COOPER (P53738)
Attorneys for Plaintiffs
1615 W Big Beaver Road, Ste A6
Troy, MI 48084
(248) 822-2212
johnjcooper@sbcglobal.net