UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MARIAH WALL, an individual,
CHRISTOPHER BOSTON, an individual,
and CRAIG MULHINCH, an individual,

       Plaintiffs,

vs.                                      Case No. 15-13254

MICHIGAN RENTAL, a sole proprietorship,
ZAKI JAMIL ALAWI, an individual,
ZA HOLDING COMPANY, LLC, a
Michigan limited liability company, and its
subsidiaries and affiliates,                       HON. AVERN COHN

       Defendants.
_____/

## MEMORANDUM AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS (Doc. 12) AND DENYING MOTION FOR SANCTIONS (Doc. 16)

### I.      INTRODUCTION

### A.

      This is a landlord/tenant dispute relating to security deposits. Plaintiffs Mariah Wall, Christopher Boston, and Craig Mulhinch are suing Defendants Michigan Rental (a sole proprietorship), ZA Holding Company, LLC, and Zaki Alawi for damages stemming from their claimed misuse of Plaintiffs' security deposits while tenants in Defendants' rental properties. Plaintiffs make claims under the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1961, *et seq.* and provisions of Michigan law. The claims of the complaint are phrased as follows:

Count I:      Violation of the RICO Act, 18 U.S.C. § 1961, *et seq.*;

Count II:      Violation of Michigan's Landlord and Tenant Relationships Act, M.C.L. § 554.601, *et seq.*;

Count III:     Statutory Conversion, M.C.L. § 600.2919a;

Count IV:     Violation of Michigan's Common Law Regarding Conversion;

Count V:      Violation of Michigan's Consumer Protection Act, M.C.L. § 445.901, *et seq.*; and

Count VI:     Unjust Enrichment, Restitution, Constructive Trust, and Accounting.

Now before the Court is Defendants' motion to dismiss the complaint (Doc. 12), and for sanctions (Doc. 16). Defendants have moved to dismiss on a variety of grounds. For the reasons that follow, Defendants' motion to dismiss will be granted and Defendants' motion for sanctions will be denied.

**B.**

This started as a RICO case. However, the complaint and subsequent briefing have revealed there is a constitutional question of standing, namely, whether Plaintiffs suffered an injury-in-fact. The Court will address *sua sponte* the threshold jurisdictional question the answer to which disposes of the case. Out of an abundance of caution, the Court also will address the substance of the motion to dismiss Plaintiffs' RICO claim.

**C.**

As discussed below, for the same reasons Plaintiffs do not have an injury-in-fact to confer constitutional standing, they also have not stated an actionable RICO claim. In particular, Plaintiffs have not incurred damage to their business or property as a result of any statutory violation. Moreover, Plaintiffs do not describe any predicate acts of fraud with sufficient particularity to make out a RICO claim.

2

**D.**

As to Plaintiffs' pendent state-law claims, the Court declines to exercise jurisdiction over them.  The claims, thus, will be dismissed without prejudice.

**II.      BACKGROUND**

From 2012 through 2014, Plaintiffs were tenants in the landlord Defendants' rental properties.  The Defendants collected roughly $2,925 in security deposits during the period Plaintiffs were tenants.  The rental agreements between the parties provided that security deposits would be deposited at Michigan Commerce Bank (MCB).  As will be discussed, Michigan has a specific statute governing a landlord's treatment of a tenant's security deposit.

At the end of a plaintiff's tenancy, the plaintiff received his or her security deposit back, minus applicable deductions for damages.  None of the plaintiffs took action to contest the security-deposit deductions, or raised an issue pertaining to the treatment of a security deposit.

In state litigation with different plaintiffs, some of the defendants admitted that an MCB account containing security deposits had less than $912.50 in funds "on one or more days" between December 3, 2012 and March 6, 2014.  (Doc. 1-6).[1]  They explained that MCB had become an "unstable" institution,[2] causing them to deem tenants' security deposits "at risk."  As such, the defendants started transferring security-deposit funds to an alternate financial institution "over time."  (*Id.*).  On March 7, 2014, defendants posted a surety bond for the security-deposit funds.

_____

[1] Plaintiffs estimate that defendants overall held more than $750,000 in security deposits during this period.

[2] MCB's parent corporation filed for bankruptcy in 2012.

3

The complaint was filed on September 15, 2015.  In the complaint plaintiffs claim that, between 2012 and 2014, the defendants misappropriated the security deposits. Plaintiffs assert that defendants either "withdrew or transferred" the security deposits that either "were or were not deposited" initially at MCB, without notifying them.  (Doc. 1 at 13-16).  In doing so, Plaintiffs assert that the defendants unlawfully dealt with the security deposits, and converted and embezzled monies under Michigan law.  In doing so, Plaintiffs say defendants made use of interstate mail, wires, and banks.  The complaint seeks treble damages under the RICO Act based on predicate acts of mail, wire, and bank fraud.

Defendants have moved to dismiss the complaint as legally deficient and for sanctions against Plaintiffs for their litigation conduct.  The Court held a hearing on the motions, after which it directed Plaintiffs to submit a case statement with more specific factual details to support the allegations of a RICO violation.  The Court asked Plaintiffs to specify the (1) dates of the predicate acts, (2) facts surrounding each act, and (3) resulting injuries to their business or property.  (Doc. 20).

After the Plaintiffs filed a RICO case statement (Doc. 21), the Court held a second hearing.  At this hearing the Court expressed doubt that the Plaintiffs suffered any damages since their security deposits were returned to them after their rental agreements expired.  At the hearing, the Defendants explained that they withdrew Plaintiffs' security deposits from MCB before it "went under" and transferred the funds to "another financial institution."  Because the funds were no longer "on deposit at [MCB]," the Defendants posted a surety bond to guarantee the deposits.  At the conclusion of

4

the hearing, the Court directed Defendants to respond to Plaintiffs' RICO case statement.  The Defendants responded (Doc. 24), and Plaintiffs replied (Doc. 25).

### III.   CONSTITUTIONAL INJURY AND STANDING

The Defendants have not raised the issue of standing.  Nevertheless, the Court may consider the question *sua sponte* to determine if it has jurisdiction over the case. *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 607 (6th Cir. 2007).

A person has constitutional standing to bring a suit in federal court if, among other things, he or she has "suffered an injury in fact."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical."  *Id.* at 1548 (quotations and citation omitted).  To be "concrete," alleged harm need not be "tangible," and it may stem from a statutory violation.  *Id.* at 1549.  Nevertheless, a plaintiff claiming a statutory violation must demonstrate that he or she confronted a "risk of real harm" apart from a "bare procedural violation" under a statutory regime.  *Id.*

Here, Plaintiffs rest their federal claim on the Defendants' claimed violation of a Michigan statute regulating landlords' use of security deposits in residential tenancies. (*See* Compl. at 13-15); M.C.L. § 554.604.[3]  The statute provides that a "security deposit shall be deposited in a regulated financial institution," and that a "landlord may use the moneys so deposited for any purposes he desires if he deposits with the secretary of state a . . . surety bond" meeting certain requirements.  M.C.L. § 554.604(1).  A tenant

---

[3] The Court sets aside for now the question of whether a factual violation of the Michigan landlord/tenant statute establishes predicate acts of racketeering.

5

in whose name a bond is posted may bring an action against the landlord, and any affected person may bring an action to enforce the statute. *Id.* §§ 554.604(2), 554.615.

According to an Attorney General's memorandum to the Governor's Executive Office on the legislation issued shortly before it was reported out of committee, there previously had been complaints about landlords who retained, and spent, tenants' security deposits without justification. *See* Mich. Att'y Gen. Memo, Analysis of House Bill 5978 (May 3, 1972) (copy attached). Some landlords were keeping the security deposits to defray advertising costs, pay agent commissions, fund new construction, and make investments—activities typically considered a cost of doing business. *See id.* Others were upcharging tenants for standard cleaning services, or assessing them large sums for physical "damage" to the premises based on ordinary wear and tear. *See id.* According to the memorandum, the statute was designed to "bring order to chaos" and set rules for the return of security deposits unless the "extraordinary risk" they insured against—serious property damage or non-payment of rent—materialized. *See id.*

Security deposits remain the tenant's property during the tenancy until a certified bond is posted. *See* M.C.L. § 554.605. The statute limits a landlord's deductions to (1) reimbursement for property damage due to conduct not reasonably expected, and (2) rent arrearage. *See id.* § 554.607. Once a landlord's interest in the property terminates, the landlord remains liable for the security deposit until it notifies the tenant of the successor to whom a security deposit is transferred. *See id.* § 554.614.

The statute does not prohibit the transfer of security-deposit funds from one regulated financial institution to another. *See id.* § 554.604. Nor does the statute require landlords to notify tenants when deposits are moved between bank accounts.

6

*See id.* As reflected in the admissions attached to the complaint, the Defendants transferred funds from MCB to another bank after deeming MCB an "unstable" institution. (*See* Doc. 1-6). There is no assertion that Defendants spent the deposits, used them for their own benefit, or posed a risk of doing so—the sort of harms the statute was intended to prevent. As Plaintiffs correctly note, the Michigan statute limits the landlord's use of their security deposits and gives them a right to sue if a violation occurs. *See* M.C.L. §§ 554.604, 554.607, 554.615. However, the statute does not give a tenant a right to damages for a violation. *See id.*

The Plaintiffs do not assert a risk that exposed them to "real" financial harm in the landlord's treatment of their security deposits. *See Spokeo, Inc. v. Robins*, 136 S. Ct. at 1549. Instead, they divine harm from the possibility of a violation of the statute. This is not the sort of "concrete" injury for which Plaintiffs have standing to seek redress in federal court. *See id.* Simply put, the Plaintiffs have not pled that Defendants did anything to put the security deposits in jeopardy.

## IV. LEGAL SUFFICIENCY OF RICO CLAIM

### A. Legal Standard

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the sufficiency of a complaint. To survive a Rule 12(b)(6) motion, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Moreover, "only a complaint that states a plausible claim for relief survives a

7

motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.*  In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Id.* at 678 (quotation and citation omitted).

In ruling on a motion to dismiss, the court may consider the complaint as well as (1) documents referenced in the pleadings which are central to plaintiff's claims, and (2) other matters of which a court may properly take notice.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  *See also Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997).  Here, the Court has considered documents that are attached to the complaint, referenced in the complaint, and attached to the motion to dismiss.

### B.   Defendants' Motion to Dismiss

### 1.

To establish a RICO Act violation, a plaintiff must show: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).  To obtain relief under the RICO Act's civil-penalties provision, a plaintiff must establish that "he has been injured in his business or property by the conduct constituting the violation."  *Id.*

8

Under the RICO statute, "racketeering activity" encompasses acts that are indictable as federal mail, wire, and bank fraud.  18 U.S.C. § 1961(1).  To establish mail fraud, a plaintiff must show that: (1) a defendant devised, or intended to devise, a scheme to defraud, or that he performed specific fraudulent acts; (2) involving the use of the mails; and (3) did so in order to execute a fraudulent scheme.  *United States v. Frost*, 125 F.3d 346, 354 (6th Cir. 1997).  A specific intent to defraud is required.  *Id.*

To prove wire fraud, a plaintiff must demonstrate: "(1) a scheme or artifice to defraud; (2) use of interstate wire communications in furtherance of the scheme; and (3) intent to deprive a victim of money or property."  *United States v. Daniel*, 329 F.3d 480, 485 (6th Cir. 2003) (quotation and citation omitted).  Further, to make out a case of bank fraud, a plaintiff must set forth facts showing, *inter alia*: "(1) that the defendant knowingly executed or attempted to execute a scheme to defraud a financial institution; [and] (2) that the defendant did so with the intent to defraud."  *United States v. Hoglund*, 178 F.3d 410, 412-13 (6th Cir. 1999).

The fraud must be alleged with particularity.  Fed. R. Civ. P. 9(b).  This requires specification of the "time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud."  *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 322 (6th Cir. 1999) (quotation and citation omitted).  A plaintiff must offer "a sufficient factual basis to support an inference that [any fraudulent misrepresentations] were knowingly made."  *Id.* (quotation and citation omitted).

**2.**

9

Plaintiffs' RICO case statement does not specify the details required.  In lieu of particular dates, names, and locations, Plaintiffs point to unknown fraudulent acts that took place "on one or more occasions" over a two-year time span.  (*See* Doc. 21 at 3, 6, 10-12).  The Defendants rightly observe that Plaintiffs have not given sufficient details about misuse of their security deposits.  In particular, Plaintiffs do not say if or when the deposits were withdrawn from their MCB account, or where the funds went after being removed.  Instead, Plaintiffs vaguely reassert that Defendants "either did not deposit, or withdrew or transferred the deposited funds" from MCB and somehow used funds to their own benefit.  (*See id.* at 3-4, 6-7, 10-13, 25).  This does not describe a predicate act of fraud—or, indeed, an act of anything.[4]  It leaves one to guess if or when funds were taken, and to where they were taken.  The statement provides no basis for concluding that Defendants spent or used Plaintiffs' security deposits.

Additionally, Plaintiffs do not adequately plead an injury to business or property.  It is undisputed that the security deposits were returned less deductions.  Clearly Plaintiffs were not entitled to have or use the security deposits.  Even assuming that the landlord mishandled the security deposits in some way, the Plaintiffs do not say that they have suffered financially as a result.

---

[4] To the extent Plaintiffs rely on Defendants' failure to include MCB's address in the rental agreement as a fraudulent representation, they fail to explain exactly what significance this omission has in a scheme by Defendants to misuse the security deposits.

## V.   PLAINTIFFS' STATE-LAW CLAIMS

Plaintiffs also bring numerous state-law claims, for violation of Michigan's

security-deposit statute.  The Court declines to exercise supplemental jurisdiction over

Plaintiffs' state claims.  *See* 28 U.S.C. § 1367(c)(3).

## VI.   DEFENDANTS' MOTION FOR SANCTIONS

Defendants move for sanctions under Fed. R. Civ. P. 11.  Federal Rule of Civil

Procedure 11 states, in part:

> **(b) Representations to the Court.**  By presenting to the court a pleading,
> written motion, or other paper–whether by signing, filing, submitting, or
> later advocating it–an attorney or unrepresented party certifies that to the
> best of the person's knowledge, information, and belief, formed after an
> inquiry reasonable under the circumstances:
>
> > **(1)** it is not being presented for any improper purpose, such as to
> > harass, cause unnecessary delay, or needlessly increase the cost of
> > litigation;
> >
> > **(2)** the claims, defenses, and other legal contentions are warranted by
> > existing law or by a nonfrivolous argument for extending, modifying, or
> > reversing existing law or for establishing new law;
> >
> > **(3)** the factual contentions have evidentiary support or, if specifically so
> > identified, will likely have evidentiary support after a reasonable
> > opportunity for further investigation or discovery; and
> > **(4)** the denials of factual contentions are warranted on the evidence or,
> > if specifically so identified, are reasonably based on belief or a lack of
> > information.

Fed. R. Civ. P. 11(b).  Under the rule, "[a] sanction imposed . . . must be limited to what

suffices to deter repetition of the conduct or comparable conduct by others similarly

situated."  Fed. R. Civ. P. 11(c)(4).  The test for whether sanctions should be imposed

"is whether the attorney's conduct was reasonable under the circumstances."  *Ridder v.*

*City of Springfield*, 109 F.3d 288, 293 (6th Cir. 1997) (citation omitted).

11

Although Plaintiffs have not described facts sufficient to support a RICO claim, imposing sanctions is unwarranted.  There is no evidence that Plaintiffs have litigated this case for an improper reason or made false allegations or unjustified legal arguments.

Defendants say Plaintiffs should be sanctioned because their suit is precluded under the doctrine of collateral estoppel stemming from state litigation involving entirely different plaintiffs.  The argument lacks merit.  Collateral estoppel cannot be used as a defense *against* persons who were non-parties to the suit to be given preclusive effect. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 n.7 (1979) ("It is a violation of due process for a judgment to be binding on a litigant who was not a party or a privy and therefore has never had an opportunity to be heard." (citation omitted)). Defendants also say Plaintiffs failed to offer sufficient evidence to support their claims. That argument is beside the point, however, as this case did not advance beyond the pleading stage.

There is no basis for imposing Rule 11 sanctions.

## VII.    CONCLUSION

For the reasons discussed above, Defendants' motion to dismiss is GRANTED.

Plaintiffs' RICO claim is DISMISSED WITH PREJUDICE.  Plaintiffs' state-law claims are

DISMISSED WITHOUT PREJUDICE.  Defendants' motion for sanctions is DENIED.

SO ORDERED.

s/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated:  June 22, 2016
        Detroit, Michigan