DEPARTMENT OF
ATTORNEY GENERAL

# MEMORANDUM

May 3, 1972

To: Executive Office

From: Frank J. Kelley
Attorney General

Re: Analysis of House Bill 5978

1. The purpose of this bill is to regulate the payment, return, use and repayment of security deposits taken on rental units.

2. a) This bill was not introduced at the request of the Attorney General.

   b) The Attorney General supports the bill.

3. The departments and agencies remotely affected are the Department of Social Services and State Housing Authority.

4. There are no budgetary implications to the State.

5. <u>Arguments for the bill</u>:

   The Attorney General's Consumer Protection Division over several years has received numerous complaints from persons from all walks and stations in life relating to the failure, reluctance or refusal of landlords to return a security deposit on premises rented either on a month to month basis or upon yearly leases. Physicians living in expensive townhouses, students in overpriced apartments to ghetto dwellers are not immune from numerous practices sought to be prohibited or regulated by this bill.

   Rent charged is that money which reflects for each unit its share of the return on capital investment, advertising, maintenance, repair, depreciation, taxes and personnel. Simply stated a security deposit is to provide a base per unit for extraordinary risk not attendant to the cost of doing business, which cost is offset by the rent.

   It has come to pass that landlords in a vast majority of transactions today extract a security deposit not for the reason of a hedge against extraordinary risk of damage, but for purposes

Analysis of House Bill 5978    -2-    May 3, 1972

of finding that extra source of revenue to (1) defray advertising costs which are normally born by rent, (2) pay rental agent commissions, (3) build a fund to pledge for new construction, (4) take for investment purposes.

Having thus departed from traditional concepts of risk allocation there has, as a result, crept into the security deposit picture chaos as to use, payment and right to return of the money. Some landlords misconceive as to whose money is involved (it is the tenants earnest or good faith money) and simply refuse return. Other landlords find the deposit a convenient source of income where an apartment remains unrented after a prior tenancy. Yet these same landlords are loathe to permit a tenant the luxury of applying that deposit to the last month's rent. While others simply spend the money and when the hour of return arrives they have none to give and thus arbitrarily refuse refund.

Aside from these obviously well meaning but ignorant landlords, we have those who basically are out to make a fast profit any way they can. There are those who write a lease that a deposit will be returned except for damage to the premises, wear and tear excepted. Yet we find that a dirty carpet, window, wall or cupboard is suddenly an extraordinary risk of damage and deductions from the deposit are made. The cleaning charges are usually sky high and on some occasions are either not actually borne by the landlord or are paid to subsidiary cleaning companies. These "damage" deposits are also translated into costs of re-rental which are deducted from the deposit amount. On many occasions costs deducted are arbitrarily excessive, such as dust closet doors--$10.00; lost key--$10.00; replacement of burnt-out light bulb--$1.00 each.

With all this in view, this bill will bring order to chaos in this area. Both landlords and tenants will be placed in an arena where each has appropriate safeguards and obligations. Each will know the rights and duties of the other.

<u>Arguments against the bill</u>:

A landlord has an absolute right to charge a security deposit for whatever reason he chooses, and regulation here is unnecessary.